All right. Welcome back, Council. Our next case is 20-8029 United States v. Mjoness. Mr. Arsici, you're up first. Good morning again, Your Honors and Council. John Arsici from the Federal Defender's Office in Denver, appearing for Appellant Joshua Mjoness. Your Honors, transmitting a threat in interstate commerce is not a crime of violence. Now, there are two parts to this analysis that I want to discuss today. First, the threat statute, Section 875C, is not divisible. And second, its kidnapping prong does not categorically entail the use of physical force. Now, starting with divisibility, I don't think the analysis is really all that difficult. As this Court has repeatedly explained, it falls on the government to establish divisibility with certainty. It simply can't do that here for a couple of reasons. First, I think the language and the structure of the statute are pretty clear on this point. 875C, 875 creates four separate crimes in four different subsections, right, that are distinguished by the purpose or the objective of the threat. Ransom, extortion, threats to person, threats to property and reputation, right? Those are the elements that divide each crime. And second... Counsel, excuse me. This statute is mailing threatening communications. And then it can be either kidnapping or it can be to injure. Now, what is the issue there? What's the problem with that? Within 875C, the statute is criminalizing, right, as you say, a threatening communication. That threatening communication can be one of two means, right? It can be kidnapping or it can be to injure. Now, if your client threatened to injure someone, the fact that kidnapping could be involved in another case is irrelevant, isn't it? No, this is because this is a 924C conviction. And we use the categorical approach under Bowen, Elgar, Cabrera. We're talking about a threat to injure, not a threat to kidnap. We're talking about a threatening communication, right? And that that's what the statute criminalized, 875C criminalized. It has two separate, totally separate pieces to it. And the pattern jury instructions make that very clear. And threatening to injure has nothing to do with threatening to kidnap. Right. They're phrasing the disjunctive. And when we're looking at... You can be categorical or not, but kidnapping doesn't enter into it at all. No, because the threshold question is one of divisibility, right? If the means of making that threat are in fact means and not elements, then we look at the entire statute. And if one of those means, one of those ways of committing the statute, such as kidnapping, is categorically nonviolent, then the entire statute does not count. Well, looking at the jury instructions, even if the statute's not as clear as it could be, it is true that the jury instructions have separate bracketed statements that, in my experience with those kinds of things, you're supposed to pick one. I mean, that indicates divisibility, doesn't it? No, I think it indicates a means, actually. I think if you look at the jury instructions as a whole, it sets out one crime, interstate transmission of threatening communication. And then it says the law makes it a crime to transmit an interstate form of commerce, a threatening communication, to kidnap or to injure. And then it sets out the first element, right, as the defendant knowingly transmitted a communication containing a threat to, and then the bracketed language. That first element makes clear that it is a threat that is being criminalized. And there are two types of threats that may be constitutional. If they were means, you would need to instruct the jury on all of them, because finding any one of them would support a conviction. And here, it appears to me, this pattern instruction is set up so you pick one or the other. There would be no reason for the prosecutor to limit them to kidnap if a threat to injure was enough. Anyway, I understand your argument. I guess I'm not particularly persuaded by it. I think that you would adapt, the brackets indicate adaptability to the particular facts of the case, right? And so that there may be a, and that's in the prefatory language of the instructions, right? And so that there may be instances in which both one may be applicable, or the other, or both, potentially. And you would select it based on the thing. But the core element is one of a constitutionally prescribable threat. And again, I think that's true in the use note too, right? It's a threat that the use note is describing. And Daguerre, I think, is sort of the best proposition for that, where you look at sort of how jury instructions phrase things in the alternative, and how that is suggestive of a means-based determination. Regardless, I think, you know, beyond that, I think... Does it matter that kidnapping is actually a separate, defined crime from a threat to injure? I mean, kidnapping comes with its own package of elements, doesn't it? Yeah, it does. And I don't think it matters in terms of the divisibility analysis, but it makes all the difference in the world on the categorical analysis. And the fact that, and I think that this court's decision recently in Mobley really answers the categorical question, right? In the sense that if we are looking at the scope of kidnapping, and I think we absolutely are, then Mobley tells us what kidnapping in 875 means. And that is, it means the federal crime of kidnapping in section 1201. That is the definition. And the scope of that... Explain to me what possible reason, when we're talking about a threat to injure, does a threat to kidnap have to this whole picture? Seems to me you're coming up with an absurd hypothetical. Well, the guy's charged with a threat to injure, but he could have been charged with kidnapping if he had been, then a threat to kidnap could be done in a less than violent way. Sure, and I... It just doesn't make any sense. Well, I think your complaint is with the categorical approach, not with our position. Well, you can take the categorical approach and you can lump everything into it and say, well, yeah, he was charged with murder, but if he had been charged with breaking and entering, it could have been done in a less violent way. So therefore, under the categorical approach, he can't be sentenced. Yeah. So, you know, if the statute is indivisible, and again, we've argued in our briefs why that is, and I've pointed it out today, then we're looking at the least of the conduct criminalized, and that's why kidnapping is so relevant. And I agree if... It has nothing to do with the charge. I'm sorry? He wasn't charged with kidnapping. No, he was charged with... he's pled guilty to a 924C. And so the 875C is the predicate offense to that 924C, which is why it has to meet this crime of violence definition, and why under Bowen and Melgar Cabrera, we're in the categorical world. If... And if it is a means, then the least... we have to look at the least violent of the possible means by which you could commit this, which would be kidnapping by deceit, basically, which wouldn't be a crime of violence. Which by its plain terms, and as this court recognized in Hopper, would not be a crime of violence. But if it's divisible, the answer falls out the other way. So it all hangs on whether it's divisible. Did you agree with that? Yeah, I agree. If the statute is not divisible, then it's not even on a substantive question. It's a procedural question, right? We didn't... Mr. Jones didn't argue for the... argue the content of the threat to injure prong below. And so under this conditional plea that we're in, just procedurally, that's not subject. That's not before the court, right? It's a question of whether or not a threat to injure is. So that can be resolved simply on procedural grounds. Now, I think, you know, the divisibility analysis, I think, is really straightforward. When you look at the structure of the statute, you look at the language of the statute. When you look at, again, I think the instructions do move the ball forward. I think the fact that it is the same penalty for threatening to kidnap or to injure, and not just the same five years, but literally the same penalty in the same subsection, that moves the ball forward. And at the end of the day, you don't... I agree with you if the penalties were different, this would be easy, because it absolutely would be an element. But I'm not sure we've ever taken the position or been told... and been directed to take the position by the Supreme Court that if the penalties are the same, that it's automatically means. And I'm not suggesting... don't let me suggest that I'm categorically saying that that has to... bad choice of words, but that I'm suggesting that that has to be true, right? What I'm saying is that it's at least a neutral factor, and anything that is neutral and doesn't move the ball forward helps Mr. Mionis, because it doesn't help the government, right? It's the government's burden to establish with certainty, right? Not, you know, partial certainty, certainty that a statute is divisible. And that's why, right, repeatedly we see decisions from Tagare to Cantu, you know, Aveda, I think, is another one where statutes are read indivisible, because the government can't satisfy that demand for certainty, right? The other thing the government posits is, you know, a random selection of, you know, of charging documents, but that doesn't move the ball forward, because that's just particular to any case. And even within that universe, right, there are cases where the government charges both means in the conjunctive, even whether the facts seem to indicate it would just be single means. That helps that actually... so that database is relevant. Why is the simple answer, and we've never held to the contrary, that this is divisible? I'm sorry? I didn't hear that. You know, the court, we have never held, never addressed the question of whether 875C is divisible or not. So why couldn't we conclude that it's divisible, containing two totally separate concepts, and your client was only charged with one of the two possible concepts? Yeah, and that just reflects the charging decision in this case, and the facts of this case. It's not responsive to the application of the categorical approach. But you're right, this is an issue of first impression here. And frankly, it's an issue of first impression, largely around the country, right? The government points to two cases, one from the Third Circuit that says the statute's indivisible, which means absolutely no analysis. It doesn't discuss means or elements, doesn't talk about Mathis or Mathis's demand for certainty. It's essentially saying it's phrasing the disjunctive, and that's... it must be divisible. So that doesn't tell us anything. And on the categorical question, the Ninth Circuit, in a summary opinion, a summary unpublished opinion, suggested that, on the categorical question, that a threat to kidnap isn't realistic. But we've proffered a number of examples of, A, where kidnapping by trickery has occurred and been prosecuted in published decisions, and that it's not a great leap of imagination to suggest how those could be communicated by threats. If the Court has no further questions, I would like to reserve my time. Thank you, Counsel. Let's hear from Mr. Schott. Your Honor, thank you. May it please the Court and Counsel, Thomas Schott for the United States. I'm an AUSA in Cheyenne, and I was the prosecutor of this case at the district court level. Your Honors, I was hoping to spend very little time on the Mathis divisibility analysis, and instead to argue the government's primary argument, which is that, irrespective of divisibility, that the statute categorically qualifies as a crime of violence. But I'll step through the looking glass here at the outset, just to address some of the points that were raised and then hopefully cycle back to what I think is the easier means for this Court to, also unfortunate language, for this Court to resolve the case. Well, what can you point to that gives us the certainty that is required that it is divisible? Well, Your Honor, the first thing I would point out is that in the Daguerre case, this Court indicated that at least it must be more certain than not. So, even when we're using the word certainty, so far as I know, the farthest this Court has gone is essentially a preponderance standard. So, the bar may be lower than the word certainty would otherwise connote. Defense counsel mentioned Mobley, Your Honors, and one thing I wanted to observe, and I didn't make this observation in the brief, although I did cite Mobley, but in Mobley, which I would concede is not dispositive, however, in Mobley, this Court was discussing the threat to kidnap alternative under 875B, which has the same language as 875C, and this Court in Mobley repeatedly referred to that alternative as an element. And we were talking about Congress's intent there, right? We were a little focused on a little different question. I agree, Judge McHugh. I don't think Mobley is dispositive on this issue, but again, its analysis is useful to clarify. In Mobley, the issue is whether a threat to commit international parental kidnapping satisfies the threat to kidnap alternative under 875B. And if you think about really what is entailed there, the question is whether international parental kidnapping is a viable means, and a threat to commit international kidnapping is a viable means to establish the element that the Supreme Court has suggested is proper. Overall analysis in Mobley favors the government here. Your Honors, I've in the brief walked through the three analytical tools that the Supreme Court supplied in Mathis, and at the risk of making an argument that I don't like, but that the Supreme Court has suggested is proper, one thing this Court can do is take a, quote, peek at the record for guidance. And the record in this case, and I agree with Mr. Arsici, it only reflects the government's charging decision in this case. But that would be the same likely in other cases as well, and yet Mathis still suggests that this Court, in trying to resolve the means-elements quandary, can take a peek at the actual charging document. Well, here, and this goes to, in the same vein as what Judge Kelly was saying earlier, the government only charged the threat to injure, because that was the only threat that there was. So, to the extent that a peek at the record is helpful under Mathis, which again, I'm not responsible for that, Your Honors, it's the Supreme Court that made that suggestion. But that peek favors the government here. The peek at the survey I did, which again, I'm not trying to say it was comprehensive, but at least based on what's available on Westlaw or what was available, it seems that that's typically how the government charges this case. Your Honors, I'm loath to rely on the pattern instruction for anything, because the pattern instruction for 875C is not authoritative. It's not as though the means-elements distinction in the pattern instruction was coming from an opinion by this court. Again, I recognize that the Supreme Court talked about jury instructions. I would submit that primarily jury instructions and pattern instructions are reliable if they're based on actual law. The drafting decisions and the use of brackets in a particular pattern instruction, I just think it's of limited value, Your Honor. I agree, Judge McHugh, that the way it's phrased favors the government. So again, to the extent that that's proper under Mathis, it favors the government in this case. Your Honor, as again, I'm happy to attempt to address any other questions on the categorical approach, but I'd like to cycle back and address a couple of other points, because really, this court need not consider the divisibility question because even if we assume for the sake of argument that the statute is indivisible and therefore both the threat to kidnap and threat to injure alternatives must qualify as crimes of violence, the threat to kidnap alternative does categorically qualify and therefore the entire statute categorically qualifies as a crime of violence. You can kidnap by, you know, fraud, misdirection, right? I mean, you don't have to use violence to kidnap someone. For purposes of this appeal, Your Honor, I don't argue otherwise. The argument that I did not make but might have made is that although you can inveigle someone, you may not be able to hold them by inveiglement, but I'm not making that argument. Well, and unless they figure out they've been inveigled, you may, you might be perfectly able to hold them. You certainly might, Your Honor. Again, I'm not, I'm not arguing otherwise today. Okay. And somehow when you threaten to kidnap someone, you no longer have, the threat can no longer encompass a non-violent kidnapping? Your Honor, my argument is that that's not realistically probable. It's difficult to even come up with the words or the factual scenario that would connote a threat to kidnap by inveiglement that is realistically probable. Well, I mean, you know, you could easily threaten to kidnap somebody's child, you know, by saying, can you help me find my puppy? I mean, I just don't see it as implausible as you do. And if you threaten to do that and it was a serious threat, I think you could be prosecuted for it. Well, there's, there's two aspects to that, to that, Your Honor. There's the, there's the question of whether it's realistically probable. There's also the question of whether that would be prosecutable as a constitutional true threat. And I do want to talk about that as well. But on the first point, whether it's realistically probable. First, as I pointed out, defense counsel does proffer cases where people have been prosecuted for kidnapping by non-violent means, but no cases where people have been prosecuted for threatening to kidnap by non-violent means, Your Honor. And again, the distinction is important. I certainly could kidnap someone by saying, hey, I want, I want you to help me look for my puppy. But how exactly would I threaten to do that? I mean, it seems to me that I would have to threaten, I would have to somehow call the mother and say, if you don't do thus and such, or because I'm a jerk, I'm going to do this, but here's how I'm going to do it. I'm going to tell your child that I'm, I'm going to look for my puppy. And the only way I will drive away with your child is if she gets into my car without being forced. I will not touch her. I will not drag her into the car. I will not do anything violent to her. I will rely purely on inveiglement. I mean, otherwise, Your Honor, if I were to send a threat that said, I know where your daughter is, and I'm going to tell her I'm looking for her puppy, the connotation is not exclusively inveiglement. We can imagine, we can imagine situations involving babysitters or, you know, friends of the victim where, where the victim is lured or kept against her will, even if it's unknowingly. The fact that it's not prosecuted very often probably means it means that other charges would be brought in those types of circumstances, then threat to kidnap. But I guess the, the case law forces us to play this hypothetical game, right? And then we have to make some judgment about whether it's a plausible hypothetical or not. And, you know, is that what we're supposed to do here? Your Honor, I, I would, I hope the case law does not require you to play the hypothetical game and that rather it would require defense counsel to actually proffer examples of when it's been prosecuted. And there's some authority to that effect. I did want to mention this court's decision in a case called Titties, which is, is pertinent. In that case, this court was looking at an Oklahoma statute, which prohibited pointing a firearm for various purposes, including a humor, prank or whimsy. And the government made the same argument in that case. Well, I, let me strike that. The government made a similar argument in that case and said, well, defense hasn't shown that this was ever prosecuted. But this court said, well, no, but right there on the face of the statute, it applies to humor, prank or whimsy. So I would distinguish that case in two ways, Your Honor. First, again, I submit the factual scenario of a threat to kidnap by embegglement is simply not realistically probable. The other way, I'm a bit, I'm the babysitter. I call mom and said, I'm not going to bring your child home unless you pay all the money you owe me in arrears and continues to hold the child past the return date. Why isn't that a realistic scenario that, you know, might involve deceit, but no threat of physical force? Your Honor, it's certainly theoretically possible. But if that scenario happened, what's mother going to do? I mean, the next call is to the police. Arrested, children returned. It just, it doesn't seem to me to be a realistically probable means or a realistically probable scenario of issuing a threat. So that, and I would apply that same reasoning to some of the other theoretical possibilities that we can come up with. You don't, I mean, you're not suggesting that when you threat, you only have to threaten to kidnap. There's nothing that says that your actual threat has to say, and I'm going to show up at the grade school and tell your seven-year-old that I've lost my puppy and get your kid to voluntarily get in my car. I mean, I don't see anything in the statute that requires the threat to be that specific. It just has to be a threat to kidnap, and then you can kidnap by a whole bunch of different ways, some of which are nonviolent. Well, Your Honor, I agree. The statute doesn't require any magic words in the threat. One can, I would, perhaps in most cases, the actual language of the threat will not use the term kidnap at all. The question is, as a matter of mens rea, at minimum, under Ilonis, the Supreme Court decision, whether the threator knew it would be used as a threat, and then how a reasonable person would interpret it. Your Honor, if I were to threaten someone and say, I'm going to kidnap your child unless you do thus and such, a reasonable person would construe that as connoting physical violence. This notion that whatever I say, because the actual act of kidnapping includes enveiglement, that the threat itself would include enveiglement, I simply, I don't think that is, that doesn't match reality. I would like to say a word, Your Honor. If this is a divisible statute, we don't have that problem. I agree, Judge Kelly. If it's a divisible statute, if it's a divisible statute. Why aren't you arguing that it's a divisible statute? Your Honor, I'm certainly arguing that it's a divisible statute. Oh, you are? I thought you said you were not arguing that. I, I, what I, what I, I didn't want to spend too much time on it this morning, Your Honor. Certainly in the brief, I've argued that it is divisible. That we're talking about elements rather than means. Again, that's consistent with this court's decision in Mobley. It's consistent with the way the government charged this case. It's consistent, apparently, with how the government charges other cases. It's consistent with the language of this court's pattern jury instruction, for whatever that's worth. It's consistent with... Worth a lot. Yes, Your Honor? The pattern jury instructions, they're worth a lot. Well, I, again, I, it's, it's, it's a strange argument to make, Your Honor. But, because again, the pattern in jury instruction, it was not based on an actual case of this court that decided the issue. Well, but it's certainly an argument the Supreme Court has given you. Well, it is, Your Honor, although I would again submit that the jury, jury instructions are most valuable when they're based on actual case law. I understand what you're saying. But, so there are, there are many reasons for this court to hold that the statute is divisible. We're only talking about the threat to injure alternative, and the threat to injure alternative is undeniably a crime of violence. So that, that's certainly a means, if this court, if this court wants to resolve it under the Mathis analysis, that analysis favors the government, especially as I pointed out, because at least to date, this court has only noted that it needs to be more certain than not that the statute's divisible. We don't need to be 100%, at least not based on prior case law of this court. On the constitutional argument, Your Honors, based on the way the Supreme Court has discussed true threats, they must be violent. So even assuming this non-violent threat to kidnap by enveiglement is realistically possible, it would not be prosecutable as a constitutional true threat, because it would not be violent. But those are all cases involving threats of harm, threats of violence, right? I mean, we don't have a case that looks at it in the context of kidnapping or another crime that you can commit without violence, right? To the extent I've researched it, Your Honor, and that's not much. I mean, I've relied on the quotes from the Supreme Court cases. I believe that's correct. But I'm also not aware of any case holding that a non-violent threat would qualify. Thank you, Your Honors. Thank you, Counsel. We have a little bit of rebuttal time left. Thank you, Your Honors. Just a couple, maybe three points. The first is that with respect to this question of certainty, Daguerre and Footnote 1 sort of posited this question of what quantum of certainty is required. Well, in Cantu last year, this court essentially answered that question, I think, and said, if, however, we cannot ultimately say with certainty that the statute is divisible, we will not apply the modified categorical approach. That's 964 F3rd at 929. So I think you have answered that question, actually, and even to the degree that you consider it an open question, the minimum threshold is more likely than not standard that Daguerre contemplated, and I don't think that's even satisfied here. The government has told you a lot of the things it's not relying on. I'm not entirely sure what it is relying on. This is a statute that, again, I think that you just look at the structure of the statute, and it sets out four different crimes with different elements, and that is the divisibility that is contemplated here. Now, with respect to Tides, I think it's an important case, and I have two points on that. The first is that this is exactly like the situation in Tides, where there was a statute that, by its own plain terms, criminalized conduct that was not, was categorically not violent. Whimsy, humor, and prank there, trickery, and enveiglement here. Tides controls the outcome on that. Tides also tells us at 9... I'll tell you the site. At 1265, what a threat of physical force is in the context of ACCA in that case, but 924C is the same force definition here, and it's the threatened use of physical force means both an intent to use force and a communication of that intent, and as we point out, that's citing to this case called King, but Tides is incorporating that into the force clause standard. That standard, as we pointed out in the opening brief, also is inconsistent with the threat induced of what constitutes a threat under 875C, so I think that that's a separate ground that you could also rely on, and then third, I think at heart, what the government is asking you to do is to say that a nonviolent... that threatening a nonviolent crime is categorically a violent one, right? The paradox that's presented by that position is, I think, proof of its implausibility, and so we would ask you to reverse. Thank you, counsel. You're excused. Case shall be submitted.